# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT STEBELTON, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:09-CV-808 |
| | : | |
| vs. | : | Judge Algenon L. Marbley |
| | : | |
| BLOOM TOWNSHIP BOARD | : | Magistrate Judge Kemp |
| OF ZONING APPEALS, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants Bloom Township Board of Zoning Appeals, et al.'s ("Board") Motion to Dismiss (Doc. 14). For the reasons discussed below, the Board's Motion is **GRANTED** in part and **DENIED** in part.

### II. BACKGROUND

Plaintiffs, Robert and Harold Stebelton, are the joint owners of a 50-acre plot of land in Bloom Township, Ohio ("the property"). Defendant, Bloom Township Board of Zoning Appeals ("the Board") is the zoning authority for Bloom Township. Defendants, Bloom Township Trustees ("the Trustees"), are responsible for passing Bloom Township Zoning Regulations. Defendants, Kimbra Reinbold, Richard Pieplow, Gerald Canini, Dan Starkey, and William McWhorter, were members of the Board at all times relevant to the Stebeltons' claims.

Southeastern Ohio Broadcasting System, Inc. ("SEOBS") is a broadcasting company whose original location for transmitting its FM radio signal servicing the central Ohio area was in Muskingum County, Ohio. SEOBS got approval from the Federal Communications Commission ("FCC") to relocate to a location in Fairfield County, Ohio, and entered a lease

agreement to do so on the Stebeltons' property. In the spring of 2006, the Stebeltons filed an application for a contingent Conditional Use Permit to see if the Board would permit a radio tower on the property. On May 18, 2006, the Board approved the contingent Conditional Use Permit. During the Board's meeting regarding the Permit, Defendant William McWhorter abstained from participation due to an alleged conflict of interest as an adjoining property owner.[1]

In September, 2007, the Stebeltons applied for a Conditional Use Permit. It is not clear what happened with that original application, but the Stebeltons applied again in July, 2008. On September 18, 2008, the Board approved the July application, subject to certain conditions. After the Board's legal counsel reviewed the decision, the Board granted the application without conditions in November, 2008. At that point, due to the delays in the permit process, SEOBS had decided to move its radio tower to another location, off of the Stebeltons' property. The application for a Conditional Use Permit at the new location was approved by the Board immediately.

In September, 2009, the Stebeltons filed a Complaint, alleging eleven causes of action: (1) a section 1983 action for violations of property rights under the Fifth and Fourteenth Amendments; (2) conspiracy to violate Plaintiffs' civil rights; (3) a declaratory judgment stating that SEOBS was a public utility exempt from zoning; (4) an unconstitutional taking without just compensation in violation of the Fifth Amendment; (5) an unconstitutional taking in violating of the Fifth and Fourteenth Amendments; (6) arbitrary and capricious substantive due process

---

[1] The Stebeltons' Complaint alleges that, despite this abstention due to a purported conflict of interest, McWhorter was not actually an adjoining property owner. (Compl. ¶ 17.)

violations; (7) unconstitutional economic discrimination, violating equal protection; (8) procedural due process violations; (9) tortious interference with a business relationship; (10) tortious interference with contractual relations; and (11) selective enforcement. Defendants then filed a Motion to Dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, --- U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint need not contain

"detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

## IV. LAW AND ANALYSIS

### A. CONSTITUTIONAL CLAIMS

The Stebeltons' Complaint alleges a variety of constitutional violations, including substantive and procedural due process violations, a government taking without just compensation, equal protection violations, and conspiracy to violate their civil rights. Each of these claims must be brought pursuant to Section 1983. In order to establish a cause of action under Section 1983, a plaintiff must establish: "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." *Simescu v. Emmet County Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991). To survive a motion to dismiss, "'[i]t is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings.'" *Vaughn v. U.S. Small Bus. Admin.*, 65 F.3d 1322, 1327 (6th Cir. 1995) (quoting *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)).

#### 1. Fifth Amendment Claims

The Stebeltons bring three separate Fifth Amendment claims: (1) in their First Cause of Action, they allege that Defendants violated their property rights under the Fifth Amendment by denying them the economically viable use of their property; (2) in their Fourth Cause of Action,

4

they allege an unconstitutional taking without just compensation; and (3) in their Fifth Cause of Action, they allege an unconstitutional taking in violation of the due process rights guaranteed by the Fifth Amendment.

Plaintiffs' second Fifth Amendment claim is a pure taking without just compensation claim. A Fifth Amendment claim alleging a taking without just compensation is not ripe for review until: "(1) there has been a final decision by the relevant state decisionmaker and (2) the property owner has utilized appropriate state inverse condemnation procedures." *Montgomery v. Carter County, Tenn.*, 226 F.3d 758, 765 (6th Cir. 2000) (citing *Williamson County Reg'l Planning Comm'n*, 473 U.S. 172, 194 (1985). A plaintiff must meet the second requirement "only if a 'reasonable, certain and adequate provision for obtaining compensation' exists in the state." *Montgomery*, 226 F.3d at 765 (quoting *Williamson County*, 473 U.S. at 194). The second requirement is necessary because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194. As a result, "no constitutional violation occurs until just compensation has been denied," through, for example, a state's inverse condemnation procedures. *Id.* at 195 n.13. Ohio law allows a plaintiff to seek a writ of mandamus "to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Preschool Development, Ltd. v. City of Springboro*, 792 N.E.2d 721, 724 (Ohio 2003). Because Plaintiffs failed to utilize this state law procedure to obtain just compensation for the alleged taking, their claim is not ripe for review by this Court.[2] Consequently, Defendants'

---

[2]The Court notes that Plaintiffs have not alleged any insufficiency in the state procedures for obtaining just compensation. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1035 (6th Cir. 1992) (noting that plaintiff "made no claim that [state law] procedures are

Motion to Dismiss Plaintiff's Fifth Amendment claim for a taking without just compensation is **GRANTED**.

Plaintiffs' first and third Fifth Amendment claims are both due process claims.[3] The Sixth Circuit has recognized the Supreme Court's reluctance to endorse substantive due process claims in the face of more specific constitutional provisions addressing the allegedly unconstitutional action.[4] *See, e.g., Warren v. City of Athens*, 411 F.3d 697, 706-07 (6th Cir. 2005) ("Supreme Court authority subsequent to *Williamson County* strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff."); *Montgomery*, 226 F.3d at 769 ("[T]he Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff."). Because the Takings Clause specifically addresses the allegedly illegal government action here, and because Plaintiffs have contemporaneously brought a takings claim, their substantive due process claims brought pursuant to the Fifth Amendment are barred. Defendants' Motion to Dismiss those claims is therefore **GRANTED**.

---

inadequate).

[3]These two claims allege violations of both the Fifth and Fourteenth Amendments; the analysis is the same under either amendment.

[4]While the Sixth Circuit has adopted this reasoning in the context of substantive due process claims in takings cases, it has been careful to note that, "[t]o be sure, in other contexts, a single action or set of actions by government officials may violate more than one provision of the Constitution." *Montgomery*, 226 F.3d at 769.

## 2. Arbitrary and Capricious Substantive Due Process Claim

The Stebeltons' Sixth Cause of Action alleges arbitrary and capricious violation of their substantive due process rights. As discussed above, pursuant to *Williamson County*, *Warren*, and *Montgomery*, Plaintiffs' substantive due process claims are barred because of the Takings Clause's narrower coverage of the conduct at issue here. Defendants' Motion to Dismiss this claim is therefore **GRANTED**.

## 3. Equal Protection Claims

The Stebeltons allege that Defendants committed unconstitutional economic discrimination against them in violation of the Fourteenth Amendment. They similarly allege that Defendants selectively enforced the zoning ordinance, also violating the Fourteenth Amendment.[5] Defendants rely on *Kenney v. Blackwell*, 225 F.3d 659 (6th Cir. 2000), for the proposition that the Board's action satisfies the rational basis test applied to property owners alleging unequal treatment. *Kenney*, however, involved a motion for summary judgment, not a motion to dismiss, and any argument regarding the merits of the Plaintiffs' equal protection claim is not appropriate until the summary judgment stage. At the motion to dismiss stage, on the other hand, the plaintiff must simply state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). In the context of an equal protection or selective enforcement claim, "a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004).

---

[5]While Plaintiffs have separated these two claims in their Complaint, they are both essentially equal protection claims, and the Court will therefore deal with them together.

Plaintiffs have alleged that they were treated differently than other, similarly situated people – namely, their permit application was subject to more scrutiny and delays than that of the people who eventually got approval to have the SEOBS tower installed on their property. They have alleged that, because of McWhorter's personal interest in denying their permit, they were singled out for adverse treatment in the permitting process, and that other, similarly situated people were treated more fairly during the process. These factual allegations are sufficient to survive a motion to dismiss. *Cf. Gay v. Martin*, 2010 WL 532687 at * 1 (E.D. Ky. 2010) (granting motion to dismiss because it did not contain factual allegations regarding similarly situated people being treated differently). Defendants' Motion to Dismiss Plaintiffs' Equal Protection claim is therefore **DENIED**.

### 4. Procedural Due Process Claim

The Stebeltons allege that Defendants' conduct during the permit application process violated their procedural due process rights. In order to establish a 1983 claim for a procedural due process violation, a plaintiff "must prove that [he] had a definite liberty or property interest and that such interest was abridged without appropriate process." *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995). In order to establish such a property interest in the permit they sought, Plaintiffs must "show either that [they] possessed a legitimate claim of entitlement to the . . . permit or a justifiable expectation that the [Board] would issue the permit." *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995). Where a zoning board has discretion to deny a permit, "even if [the applicant] complied with certain minimum, mandatory requirements, then [the applicant] would not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan." *Silver v. Franklin Twp. Bd. of Zoning*

8

*Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (quoting *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990)).

In *Silver*, the court examined a zoning ordinance very similar to the one at issue in this case.[6] The court in *Silver* held that the language of the zoning ordinance gave the zoning board "such broad discretion" that the plaintiff "possessed neither a legitimate claim of entitlement to the [permit] nor a justifiable expectation that the Board would issue the [permit]," and thus found that he had no property interest for purposes of a due process claim. *Silver*, 966 F.2d at 1036. The language at issue here gives similarly (almost identically) broad discretion to the Board. As a result, the Stebeltons had no property interest in the permit they sought that would support a procedural due process claim. Defendants' Motion to Dismiss that claim is therefore **GRANTED**.

### 5. Conspiracy Claim

The Stebeltons' Second Cause of Action alleges conspiracy to violate their civil rights. A "conspiracy is 'an agreement between two or more persons to injure another by unlawful action.'" *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000)). Under Section 1983, "conspiracy claims must be pled with some

---

[6]The *Silver* ordinance directed the board, before issuing a zoning certificate, "to consider, among other things, whether the proposed use is (1) *harmonious* and *appropriate* in appearance with the existing or intended character of the general vicinity; (2) *hazardous* or *disturbing* to existing or future adjoining neighborhoods; or (3) *detrimental* to the property in the immediate vicinity." *Silver*, 966 F.2d at 1036 (emphasis in original). The zoning ordinance at issue here requires the Board, before issuing a permit, to find evidence that the structure and intended use: "will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area" and "will not be hazardous or disturbing to existing or future neighboring uses."

degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiffs allege that "Defendants conspired together to intentionally deprive Plaintiffs of their civil rights and the economically viable use of their property, specifically interfering with their contractual and business relations, all to the financial detriment of the Plaintiffs." (Compl. at ¶ 32.) Additionally, they allege that "Defendants, acting under the color of state law, with a malicious and willfull purpose, conspired together to violate Plaintiffs' constitutionally protected civil and property rights." (*Id.* at ¶ 41.) These "'conclusory allegations of unconstitutional conduct by persons acting under color of state law'" are not enough to survive a motion to dismiss; "'some factual basis for such claims must be set forth in the pleadings.'" *Vaughn v. U.S. Small Bus. Admin.*, 65 F.3d 1322, 1327 (6th Cir. 1995) (quoting *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)) (granting motion to dismiss where plaintiff alleged only that he was denied benefits because he was "a blind white man," and that "[s]uch denial . . . was arbitrary and capricious and constitutes discrimination on the basis of handicap and race").

Because Plaintiffs have failed to plead their 1983 conspiracy claim with the requisite specificity and supporting factual basis, Defendants' Motion to Dismiss that claim is **GRANTED**.

### B. REQUEST FOR DECLARATORY JUDGMENT

The Stebeltons request that this Court issue a declaratory judgment stating that, at all times relevant for purposes of their Complaint, SEOBS was a public utility exempt from zoning by the Board. The Ohio Revised Code exempts public utilities from the authority of a board of

10

zoning appeals. Ohio Rev. Code § 519.211(A).[7] As such, the Board would generally not have zoning authority over SEOBS. The Code also, however, explicitly grants such a board with authority "with respect to the location, erection, construction, reconstruction, change, alteration, removal, or enlargement of a telecommunications tower." *Id.* § 519.211(B)(2).[8] Because the statute explicitly grants the Board with the authority to determine an appropriate location for a

---

[7] Ohio law provides: "Except as other wise provided in division (B) or (C) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any building or structures of any public utility or railroad, whether publicly or privately owned, or the use of any land by any public utility or railroad." Ohio Rev. Code § 519.211(A).

[8] "Telecommunications tower" is defined in the statute as:

> any free-standing structure, or any structure to be attached to a building or other structure, that meets all of the following criteria:
> (a) The free-standing or attached structure is proposed to be constructed on or after October 31, 1996.
> (b) The free-standing or attached structure is proposed to be owned or principally used by a public utility engaged in the provision of telecommunications services.
> (c) The free-standing or attached structure is proposed to be located in an unincorporated area of a township, in an area zoned for residential use.
> (d)(i) The free-standing structure is proposed to top at a height that is greater than either the maximum allowable height of residential structures within the zoned area as set forth in the applicable zoning regulations, or the maximum allowable height of such a free-standing structure as set forth in any applicable zoning regulations in effect immediately prior to October 31, 1996, or as those regulations subsequently are amended.
> (ii) The attached structure is proposed to top at a height that is greater than either the height of the building or other structure to which it is to be attached, or the maximum allowable height of such an attached structure as set forth in any applicable zoning regulations in effect immediately prior to October 31, 1996, or as those regulations subsequently are amended.
> (e) The free-standing or attached structure is proposed to have attached to it radio frequency transmission or reception equipment.

Ohio Rev. Code § 519.211(B)(1).

telecommunications tower, and SEOBS was seeking to place a telecommunications tower on Plaintiffs' property, Plaintiffs' request for a declaratory judgment stating that the Board was without authority to zone the project is without merit, and Defendants' Motion with respect to the declaratory judgment claim is **GRANTED**.

## C. TORT CLAIMS

### 1. Immunity

Plaintiffs concede in their Response Brief (Doc. 20) that the Board and the Trustees are entitled to political-subdivision immunity under Ohio law. *See* Ohio Rev. Code § 2744.02(A)(1) & (B)(1)-(5) (establishing political-subdivision immunity, and listing exception to immunity, which do not include intentional torts). Defendants' Motion to Dismiss the tortious interference with a business relationship and tortious interference with contractual relations is therefore **GRANTED** with respect to the Board and the Trustees.

Political-subdivision immunity does not, however, apply to the individual defendants named in the Complaint. An individual employee of a political subdivision does enjoy immunity unless "[t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities," or "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6). Here, the Stebeltons have alleged, with respect to Defendant McWhorter, both that he was acting outside the scope of his employment when he attempted, acting in his individual capacity, to influence the Board's decision with respect to the Stebeltons' permit applications, and that he acted maliciously. With respect to the rest of the individual defendants, the Stebeltons allege that their actions in denying the permit applications were taken in bad faith.

12

To support that conclusion, Plaintiffs allege that the individual defendants were acting in concert with Defendant McWhorter to protect his personal interests, and that the impropriety of their actions is evidenced by the Board's legal counsel's subsequent decision to grant the application without any conditions. The Stebeltons have alleged enough, at the motion to dismiss stage, to establish that the individual defendants are not entitled to immunity on the intentional tort claims.

### 2. Tortious Interference with a Business Relationship

In order to establish a claim for tortious interference with a business relationship, the Stebeltons must establish "(1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *EJS Properties, LLC v. City of Toledo*, 651 F.Supp.2d 743, 759 (N.D. Ohio 2009) (citing *Dolan v. Glouster*, 879 N.E.2d 838, 847 (Ohio. App. 2007). The Stebeltons have alleged each of the four elements required to establish a claim for tortious interference with a business relationship: (1) that they had signed a lease with SEOBS, establishing a business relationship; (2) that the individual defendants knew about their relationship with SEOBS due to the permit applications; (3) that the individual defendants intended to prevent SEOBS from relocating its radio tower onto the Stebeltons' property in order to protect the personal interests of Defendant McWhorter; and (4) that they suffered damages a result of the individual defendants' actions. Defendants' Motion to Dismiss the tortious interference with a business relationship claim against the individual defendants listed in the Complaint is therefore **DENIED**.

### 3. Tortious Interference with Contractual Relations

To establish a claim for tortious interference with contractual relations, the Stebeltons must establish: "(1) the actual existence of a contract or negotiations with regard to a contract; (2) defendant's knowledge of the contract or negotiations; (3) the defendant's interference in the contract or negotiation; (4) the defendant's conduct was malicious and without legal justification; and (5) damages." *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio App. 1993). Again, Plaintiffs have alleged each of the five necessary elements sufficiently to defeat a motion to dismiss: (1) that they had signed a lease with SEOBS; (2) that the individual defendants knew of the lease due to the permit applications; (3) that the individual defendants interfered with the lease by denying permit applications and delaying the permit process; (4) that the individual defendants' conduct was malicious and unlawful, as evidenced by the Board's legal counsel's decision to grant the permit application without condition; and (5) that they suffered damages. As a result, Defendants' Motion to Dismiss the tortious interference with contractual relations claim against the individual defendants is **DENIED**.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED** in part and **DENIED** in part. The Motion is **DENIED** with respect to Plaintiff's equal protection/selective enforcement

claims, as well as their intentional tort claims against the individual defendants, and is

**GRANTED** with respect to all other claims.

      **IT IS SO ORDERED.**

                                                          s/Algenon L. Marbley
                                                  **Algenon L. Marbley**
                                                  **United States District Judge**

      **Date: April 21, 2010**