**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT STEBELTON,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 2:09-CV-808** |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **BLOOM TOWNSHIP BOARD OF** | : | **Magistrate Judge Kemp** |
| **ZONING APPEALS,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on the Motion for Summary Judgment of Defendants Bloom Township Board of Zoning Appeals, Bloom Township Trustees, Kimbra Reinbold, Richard Pieplow, Gerald Canini, Dan Starkey and William McWhorter (Doc. 33). For the reasons that follow, this motion is **GRANTED.**

### II. BACKGROUND

#### A. Factual History

Plaintiffs Robert and Harold Stebelton are the joint owners of a fifty-acre plot of land in Bloom Township, Ohio ("Property"). Defendant Bloom Township Board of Zoning Appeals ("Board") is the zoning authority for Bloom Township. Defendant Bloom Township Trustees ("Trustees") are responsible for passing Bloom Township zoning regulations. Defendants Kimbra Reinbold, Richard Pieplow, Gerald Canini, Dan Starkey, and William McWhorter were members of the Board at all times relevant to the Stebelton's claims.

Southeastern Ohio Broadcasting System, Inc., which operates under the call letters WHIZ, is a broadcasting company that at one time transmitted its FM radio signal servicing the central Ohio area from Muskingum County, Ohio. The Federal Communications Commission ("FCC") subsequently gave approval for WHIZ to relocate its transmission to Fairfield County, Ohio. To that effect, WHIZ sought and entered into an option to lease agreement to construct a 300-foot tower on the Stebeltons' property. WHIZ was obligated under Paragraph 2 of the lease to immediately exercise the option in the event that Bloom Township granted final approval of a conditional use permit for the erection of the transmission tower. Paragraph 5 established that it was WHIZ's duty to secure the appropriate permits and approvals. The Stebeltons had a duty under that same provision to cooperate with WHIZ in obtaining the permits.

WHIZ filed its first application on April 5, 2006. The Board addressed the first application at a meeting on April 20, 2006, at which William McWhorter announced he would abstain from any vote on the application. McWhorter did, however, participate in the meeting as a private citizen, speaking out against the application. McWhorter owns a parcel of land from which the potential tower could be seen and opposed its construction on that ground.

The first application set forth the parcel of land on the property where the tower would be constructed. The Board denied the application on May 18, 2006, due to incompleteness.

The Stebeltons claim that the reason the first application was incomplete was because the Stebeltons and WHIZ were seeking conditional approval of the exact site for the transmission tower before they continued in the process. They sought conditional approval because the exact site would not be known until it received approval from the FCC and the FAA, as well as the completion of engineering and soil studies. These steps were costly, and WHIZ and the Stebeltons did not wish to undergo them without conditional approval from the Board.

2

Following the May 18, 2006, denial, WHIZ filed its second application on June 6, 2006. The Board found the second application incomplete because, among other deficiencies, it did not include FAA approval or the lease agreement documentation. On August 16, 2006, the Board voted to deny the second application on the ground of incompleteness. Despite the incomplete application, the Board granted the Stebeltons and WHIZ a contingent conditional use permit, contingent upon full compliance with all provisions of Section 812 of the zoning ordinance. Final approval would follow demonstrated compliance with all provisions of Bloom Township Zoning Resolutions. WHIZ then proceeded to seek the approvals needed from the FCC and FAA for the exact site where the tower was to be constructed and ordered and paid for engineering and soil studies.

The Parties' accounts of the third and fourth application submissions differ. The Defendants contend that WHIZ filed a third application on February 22, 2007. They claim the third application proposed changes to the location and height of the tower and that the Board voted to amend the site plan on March 15, 2007. They further note that the Stebeltons had no issue with the March 15th vote to amend. Following the February submission, according to the Defendants, WHIZ filed its fourth application on July 1, 2007. The Board met on August 16, 2007, and voted to deny the application because it did not meet all of the requirements of Section 812.

The Stebeltons contend that there were no applications in February or July of 2007. Rather, they claim that their third application (which the Defendants count as the fifth) was submitted in September 2007. The Board denied this application on October 18, 2007, because the application was missing a letter of credit required under Section 812.11. In addition, the Board decided to have WHIZ's application submitted for an independent review by an engineer

at WHIZ's expense in the amount of $1,500. The September 2007 application was then tabled until November 15, 2007.

The Board met on November 15, 2007. At that time, Mark Bohac, the engineer hired by the Board, testified that if the Board voted to move the site only a few feet from the proposed based location, the whole process—including the FCC and FAA approval and the engineering and soil studies—would have to begin anew. The Board cited three additional items needed to complete the September application: a letter of credit, an easement that provided access to the site in case of abandonment, and a sworn narrative as to why nonresidential sites were not available. The Board then again tabled the vote on the September application until December 2007.

The Board next met to review the application on December 13, 2007. The Board denied the application at that time, but the Parties differ on the reason for the denial. The Stebeltons claim that the Board denied the application because of remaining issues with the easement and letter of credit. The Defendants claim that the only outstanding issue was the Section 812.8 requirement of a licensing agreement granting easement access to the Township in case of abandonment. According to the Defendants, the Stebeltons' refusal to sign the required easement when WHIZ presented it to them caused the application to fail.

WHIZ filed their last application on July 21, 2008, which the Board considered in August. The Stebeltons allege that the application included the easement access documentation, the letter of credit, and a narrative about other locations being unavailable. The Defendants claim that because the Stebeltons would not grant easement access to the Township, WHIZ obtained an alternative easement using a neighbor's property and only a small portion of the Stebelton's property. The Defendants also rely on the August 21, 2008, Board Minutes, which state that the

Stebeltons had signed the license of access but had not submitted the line of credit before the Trustees.

The Board met again on September 18, 2008, and voted to approve WHIZ's application with the requirement that the tower be located 500 feet away from all property lines. WHIZ appealed the September vote to the Fairfield County Court of Common Pleas on October 17, 2008. While this appeal was pending, the Board voted to approve the final conditional use permit application on November 12, 2008, without the condition to relocate the tower.

Before the November vote was finalized, and without the Stebeltons' knowledge, WHIZ moved forward with a new property owner and a new site. On December 23, 2008, WHIZ submitted a completed permit application to increase the height of an existing radio tower on another property. The Board approved that application on December 29, 2008.

**B. Procedural History**

In September 2009, Plaintiffs Bob and Harold Stebelton filed a complaint alleging eleven causes of action: (1) a § 1983 action for violations of property rights under the Fifth and Fourteenth Amendments; (2) conspiracy to violate Plaintiffs' civil rights; (3) a declaratory judgment stating that SEOBS was a public utility exempt from zoning; (4) an unconstitutional taking without just compensation in violation of the Fifth Amendment; (5) an unconstitutional taking in violation of the Fifth and Fourteenth Amendments; (6) arbitrary and capricious substantive due process violations; (7) unconstitutional economic discrimination, violating equal protection; (8) procedural due process violations; (9) tortuous interference with a business relationship; (10) tortuous interference with contractual relations; and (11) selective enforcement.

The Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) on October 27, 2009 (Doc. 14). The Court granted the motion in part and denied it in part, dismissing claims one through six and claim eight with respect to all defendants, and dismissing claims nine and ten with respect to the Board and the Trustees. Claims seven and eleven (equal protection claims) remain against all Defendants, and claims nine (tortious interference with a business relationship) and ten (tortious interference with a contractual relationship claim) remain against the Individual Defendants.

The Board, the Trustees, Reinbold, Pieplow, Canini, Starkey, and McWhorter filed a Motion for Summary Judgment on January 17, 2011, seeking summary judgment on all remaining claims (Doc. 33). The Court has considered the memoranda and exhibits filed and the arguments submitted by the Parties at oral argument, and the matter is now ripe for a decision.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

251–52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co*., 8 F.3d 335, 339–40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW AND ANALYSIS

### A. Equal Protection (Claims Seven and Eleven)

The Plaintiffs allege that Defendants committed unconstitutional economic discrimination against them in violation of the Fourteenth Amendment. They similarly allege that Defendants selectively enforced the zoning ordinance, also violating the Fourteenth Amendment. The Court will, as it did at the motion to dismiss stage, treat these two claims as one since they raise the same substantive issues.

In the context of an equal protection or selective enforcement claim, "a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004); *see also Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (dismissing equal protection claim where plaintiff seeking permit for condominium construction had proof of approvals of other condominium developments but had not demonstrated them to be similarly situated). At the summary judgment stage, a plaintiff must make "concrete allegations

7

with respect to similarly situated persons." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008).

The Defendants argue that they are entitled to summary judgment because the Plaintiffs have not shown that they were treated differently from any similarly situated people. Indeed, as stated in the unrebutted testimony of Anne Cyphert, WHIZ's conditional use permit application under Section 812 was the first of its kind. The Plaintiffs retort that the Board treated the property where WHIZ ultimately located its tower differently. As the Defendants contend, however, a permit for a modification to a preexisting tower is not similar to one for the construction of a completely new tower. This difference is embodied in the zoning code, which requires conditional use permits of new towers but not of modifications to old ones. *See* Bloom Township Zoning Resolution § 812.7.

This case is similar to *Baskin v. Bath Twp. Bd. of Zoning Appeals*, No. 95-3042/95-3881, 1996 U.S. App. LEXIS 30686 (6th Cir. 1996). There, as in this case, the plaintiff sought to construct radio towers. The local zoning board approved the plaintiff's application, but imposed several conditions. *Id*. at *5. The plaintiff challenged that conditional approval on equal protection grounds, arguing that the zoning board's unconditional approval of towers up to 50 feet in height demonstrated selective enforcement. *Id*. at *13. The district court and the Sixth Circuit both rejected this argument because the tower the plaintiff sought to build would have been 120 feet high. *Id*. at *15–16. A 120-foot-high tower is not similarly situated to those under 50 feet. *Id*. at 15. The plaintiff had therefore failed to meet an essential element of his equal protection claim. So, too, have the Plaintiffs in the case *sub judice* failed to prove an essential element in their equal protection claim.

The Plaintiffs point to several instances where the Individual Defendants admitted at deposition that the Board departed from its standard procedures in an attempt to show an equal protection violation.[1] None of these are sufficient to generate a triable issue of fact on the equal protection claim.

First, the Plaintiffs argue that Anne Cyphert, who had a conflict of interest, did not advise the Plaintiffs of any deficiencies in their application in time for them to make any necessary amendments despite the fact that it was her usual practice to do so. But Cyphert's deposition testimony reveals instead that her normal practice was to advise applicants of deficiencies when applying under zoning sections with which she had dealt before, not sections like 812 with which she was wholly unfamiliar. Hence, Cyphert's testimony does not demonstrate that she, on behalf of the Board, treated the Plaintiffs' differently from similarly situated applicants.

Second, the time the Plaintiffs submitted their application for a conditional use permit until the time that permit was approved greatly exceeded the standard length of a review. The evidence in the record, however, shows that the delay was attributable to the multiple incomplete applications submitted by WHIZ and the Plaintiffs. The Plaintiffs do not even dispute that most of their applications were rightly denied, and cannot now fault the Defendants for their own negligence.

---

[1] The Plaintiffs' arguments regarding the arbitrary and capricious nature of the process to which the Board subjected them sound more properly in the Plaintiffs' already-dismissed due process claim. *See Baskin*, 1996 U.S. App. LEXIS 30686, at *12 (discussing the plaintiff's substantive due process claim and stating that "[w]here the challenged decision was discretionary, a plaintiff may prevail on a substantive due process claim if he 'show[s] that the state administrative agency has been guilty of arbitrary and capricious action in the *strict* sense, meaning that there is no rational basis for the . . . [administrative] decision.'"). Because this claim has been dismissed, and because the Court need not consider the rationality of the Board's decisions in the equal protection context unless the Plaintiffs produce a similarly situated party, *see id.* at *14–15; *Silver*, 966 F.2d at 1036–37; *Braun*, 519 F.3d at 574, the Court will not consider these arguments further.

Third, the Board voted on the application in September 2008 with only three, rather than the requisite four, members present, creating an appealable issue. The relevance of this procedural mishap, which did not hinder the ultimate approval of the Plaintiffs' application, to the Plaintiffs' equal protection claim escapes this Court.

Fourth, the grant of a contingent conditional use permit in July of 2006 was an unprecedented act. But the contingent permit was granted upon the Plaintiffs' request. If the Plaintiffs' received differential treatment in this regard, it was to their benefit.[2]

Fifth, McWhorter's abstention and continued participation as a citizen was also unprecedented. McWhorter did not vote on the approval or disapproval of the Plaintiffs' application. Any influence that he may have had over the Board was that of a citizen attempting to persuade the Board. The Plaintiffs also object to the Board's reliance on unsworn testimony from McWhorter when only sworn testimony was to be considered.  Even assuming this evidence is sufficient to create a material issue of fact on the equal protection claim, the Plaintiffs' factual assertion is unsupported in the record: The Court can discern no evidence showing that McWhorter's testimony *was* unsworn.[3] The only Board minutes to which the Plaintiffs have cited that include a reference to McWhorter, from August 16, 2007, show that McWhorter was sworn in before he rendered his opinion. McWhorter admitted during his deposition that he did not bring documentary or expert evidence substantiating his claim that

_____

[2] The Plaintiffs asserted in their memorandum and at oral argument that the contingent conditional use permit created a vested right in favor of the Plaintiffs and WHIZ, relying on *Danis Clarkco Landfill Co. v. Trustees of German Twp.*, No. C-3-96-481, 1997 U.S. Dist. LEXIS 21081, at *67–68 (S.D. Ohio Apr. 16, 1997). The Plaintiffs' reliance is misplaced as the discussion of vested rights in *Danis Clarko* occurred in the context of rights under Ohio law, not the equal protection clause of the United States Constitution.

[3] The Court will assume that the Plaintiffs' representation that testimony must be sworn is accurate. McWhorter testified in his deposition that testimony at public Board hearings was typically sworn, and Section 1204.2 governing proceedings of the Board provides for the administration of oaths.

construction of the WHIZ tower would reduce property values in the surrounding parcels, but did not admit that his oral testimony was unsworn. As to the supporting evidence, moreover, McWhorter testified that the Board refused to consider his opinion regarding property values unless or until he properly substantiated it. McWhorter's deposition thus bolsters the Defendants' argument that the process the Plaintiffs experienced was in accordance with standard procedures.

In sum, none of these arguments negates the fact that the Plaintiffs have not shown any similarly situated applicants who were treated differently from the Plaintiffs. Because the Plaintiffs have failed to produce evidence of similarly situated parties that the Board treated differently—i.e. parties who submitted substantially similar applications for a new tower—the Court must **GRANT** the Defendants' motion to dismiss the Plaintiff's equal protection claims against all Defendants.

## B. Tortious Interference with a Business Relationship (Claim Nine) & Tortious Interference with a Contractual Relationship (Claim Ten)

### 1. The Board, the Trustees, and the Board Members

The Plaintiffs' two tortious interference claims require proof of the same elements: "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (Ohio 1995). These torts "'require[] proof that the defendant has acted maliciously.'" *Id.* (quoting *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 16 (Ohio 1990)). To show that an act was done with malice, "[i]t is not enough that [the defendant] intend to perform the act; he must intend to produce the harm." *Haller*, 50 Ohio St. 3d at 16.

The Individual Defendants claim the following: (1) that there are no facts in the record to support the intent elements of these torts; and (2) that they are immune from suit for either of these torts because any actions they took were in the scope of their official responsibilities. Under Ohio law, employees of a political subdivision are immune from suit unless "(a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) liability is expressly imposed upon the employee by the Ohio Revised Code." Ohio Rev. Code Ann. § 2744.03(A)(6).

In the case *sub judice*, the Plaintiffs' evidence of the Individual Defendants' motivations is his own speculative opinion. The Plaintiffs also point to McWhorter's conduct aimed at blocking the tower. But McWhorter did not vote on the Plaintiffs' application, so this evidence does not establish the intention of the parties whose opinions actually determined the outcome of the Plaintiffs' zoning application. The Plaintiffs, therefore, can neither overcome the statutory immunity afforded to the Individual Defendants nor prove an essential element of these intentional torts. The Court accordingly **GRANTS** the Defendants' motion for summary judgment on the Plaintiffs' tortious interference with a business and contractual relationship claims.

### 2. McWhorter

The situation with respect to Defendant McWhorter is different. McWhorter was not serving on the Board and therefore is not entitled to statutory immunity. There is no evidence, however, suggesting that McWhorter advocated against the tower for the purpose of disrupting the Plaintiffs' business or contractual relationship with WHIZ and thus no evidence supporting the malice element of these two claims. McWhorter, moreover, is entitled to a privilege:

> A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits. . . . All that is necessary to entitle such communications to be regarded as privileged is, that the relation of the parties should be such as to afford a reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.

*Hahn v. Kotten*, 43 Ohio St. 2d 237, 246 (Ohio 1975).

In the case *sub judice*, there is no genuine dispute regarding the fact that McWhorter's advocacy against the WHIZ tower occurred in the context of the Board's public hearings and arose out of his antipathy towards having a tower within view of his property, and the Court accordingly concludes that McWhorter is entitled to a privilege, defeating the tortious interference claims. *Cf. Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St. 3d 163, 166 (Ohio 1983) (affirming summary judgment on defamation claim where "there was no showing of any ill will, spite, or some ulterior motive on the part of appellee's officers toward this appellant").

For these reasons, the Plaintiffs have failed to show a genuine dispute of a material fact regarding their tortious interference claims, and Defendant McWhorter is entitled to summary judgment as a matter of law. The Defendants' motion to dismiss the state law claims against Defendant McWhorter is accordingly **GRANTED**.

13

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is

**GRANTED**. The remainder of the Plaintiffs' claims are hereby **DISMISSED.**

**IT IS SO ORDERED.**

/s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE:** September 1, 2011